UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICK & DUKE LLC,

                                         Plaintiff,

                          -v-

DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT OF
THE CITY OF NEW YORK,

                                         Defendant.

16-CV-2790 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Nick & Duke LLC ("Nick & Duke") brings this action against the Department of Housing Preservation and Development of the City of New York ("HPD") challenging the constitutionality of the imposition of a restriction on Nick & Duke's property. (*See* Dkt. No. 18 ("FAC").) Generally, Nick & Duke alleges that HPD failed to provide adequate notice of the filings or proceedings which led to the restriction, leading to a deprivation of Nick & Duke's due process and equal protection rights under the Fourteenth Amendment to the United States Constitution and the Constitution of the State of New York. HPD moves to dismiss each of Nick & Duke's claims.[1] For the reasons that follow, the motion is granted in part and denied in part.

---

[1] On May 23, 2017, this Court issued an Order to Show Cause why this case should not be dismissed for failure to exhaust any adequate state post-deprivation procedures. (Dkt. No. 32.) After reviewing the parties' submissions, the Court cannot conclude at this stage whether Nick & Duke could have brought a proceeding based on its deprivation of due process claims in New York State Court pursuant to CPLR Article 78. In this action, Nick & Duke puts forth both as-applied and facial constitutional challenges to the regulatory scheme at issue. With respect to the facial challenges, "[w]hile a New York litigant may mount a constitutional challenge to the application of a state statute in an Article 78 proceeding, facial constitutional challenges to legislative enactments may not be raised in an Article 78 proceeding to review an administrative action." *Woodner v. Eimicke*, No. 87 Civ. 8872, 1990 WL 100909, at *3 (S.D.N.Y. July 13, 1990). As to the as-applied challenges, "at the motion to dismiss stage, there are questions as to the adequacy of Article 78 procedures under the particular circumstances of this case." *Fishman*

I.   **Background**

The following facts are taken from the operative complaint and are presumed true for the purposes of this motion.

The lot in question in a corner parcel known as 182-188 11th Avenue, Manhattan, New York County Block 695, New York, New York ("Corner Parcel"). (FAC ¶ 2.) The Corner Parcel consists of Lots 1 and 3.[2] (*Id.* ¶¶ 10, 13.) On Lot 1 stands a Single Room Occupancy ("SRO") multiple dwelling known as 561-565 West 23rd Street. (*Id.* ¶¶ 11, 18.) Lot 3 is vacant. (*Id.* ¶ 12.)

In 1979, Gurdayal Kohly ("Kohly") purchased the Corner Parcel, becoming the owner of record. (*Id.* ¶ 9.) In 2000, Kohly formed Nick & Duke, became its managing member, and transferred his ownership interest in the Corner Parcel to the newly formed entity. (*Id.* ¶¶ 14-15.) In 2004, Nick & Duke executed a long-term Net Ground Lease with West 23rd Street Hospitality, LLC ("West 23rd") for the Corner Parcel. (*Id.* ¶ 19.) And in 2007, West 23rd assigned its lease to MJG Holdings, LLC ("MJG"). (*Id.* ¶ 23) Without notifying Nick & Duke, MJG then applied for a building permit for Lot 1. (*Id.* ¶ 26-27.)

---

*v. Daines*, 743 F. Supp. 2d 127, 146 (E.D.N.Y. 2010). In particular, Nick & Duke would have had to bring any Article 78 proceeding "within four months of the [August 4, 2011] determination that harassment had occurred at the subject SRO building." (Dkt. No. 39 at 2.) However, Nick & Duke alleges that it did not receive notice of the proceedings in any form until May 1, 2013. If this Court were to dismiss the as-applied challenges for failure to exhaust post-deprivation procedures, therefore, Nick & Duke would be without any remedy. As such, at the motion to dismiss stage, the Court declines to dismiss this case based on the purported availability of Article 78 remedies.

[2]   Some documents in this case refer to Lots 1, 3, and 4. Lots 3 and 4 were combined into Lot 3; there is no longer a Lot 4. (*Id.* ¶ 13.)

2

The Corner Parcel, including Lot 1, is located in the Special West Chelsea District, a designated "anti-harassment area."[3] (*Id.* ¶¶ 16, 18.) As such, before a building permit can issue, certain requirements must be met. (*Id.* ¶ 17.) In relevant part, the Corner Parcel is subject to the Certification of No Harassment ("CONH") requirements set forth in the SRO Anti-Harassment provisions as codified in the New York City Administrative Code ("Admin. Code") § 27-2093 and Zoning Resolution ("ZR") §§ 98-70 and 93-90. (*Id.* ¶ 18, 29-30.)

Without notifying Nick & Duke, MJG applied to HPD for a CONH. (*Id.* ¶ 28.) Pursuant to Admin. Code § 27-2093(d)(1), upon receipt of an application for a CONH, HPD must mail notice to the owner of record. (*Id.* ¶ 31.) However, neither Kohly nor Nick & Duke ever received notice of the proceedings, as it appears that the notice was mailed to an incorrect address. (*Id.* ¶¶ 32-37.) Pursuant to the terms of the Net Ground Lease, Nick & Duke had the right to require MJG to abandon its application for a CONH. (*Id.* ¶ 39.)

Upon receiving MJG's application, HPD conducted a CONH investigation to determine whether harassment had occurred on Lot 1 over the three-year period preceding the application. (*Id.* ¶ 38.) Unbeknownst to Nick & Duke, HPD determined there was reasonable cause to believe that MJG and its invitees had harassed several SRO tenants who resided on Lot 1, and HPD scheduled a hearing with an Administrative Law Judge at the New York City Office of Administrative Trials and Hearings ("OATH"). (*Id.* ¶¶ 42-44.) On March 19, 2009, OATH issued a Report and Recommendation ("OATH Report"), finding that MJG and its invitees had harassed several SRO tenants who resided on Lot 1 and recommending that the CONH be denied. (*Id.* ¶¶ 47-49.) HPD mailed the OATH Report to Nick & Duke, again to an incorrect

---

[3] HPD describes an "anti-harassment area" as "a district in which, in order to protect tenants from harassment in furtherance of development by owners and operators of multiple dwellings, specific prerequisites have been mandated before any material alterations can be made to multiple dwellings." (Dkt. No. 21 at 2.)

address. (*Id.* ¶¶ 50-51.) In 2009, the HPD Deputy Commissioner denied the CONH application in a final determination. (*Id.* ¶ 52.) That final determination was also sent to the incorrect mailing address. (*Id.* ¶ 53-54.) After the issuance of the final determination, MJG vacated the Corner Parcel, assigning the Net Ground Lease back to West 23rd. (*Id.* ¶ 56.) In 2013, Nick & Duke entered into an Amended and Restated Ground Lease with Audthan LLC ("Audthan"), which was later terminated in 2016. (*Id.* ¶ 60-61.)

As a result of the final determination, HPD imposed a restrictive declaration on the Corner Parcel in perpetuity, precluding the issuance of an "as of right" building permit unless and until the owner complies with the cure requirements of Section 93-90 of the Zoning Resolution of the City of New York ("the Cure"). (*Id.* ¶¶ 55, 58.) The Cure requires an amount of floor area to be set aside for low-income housing in perpetuity; that amount cannot be less than the greater of: (i) 28 percent of the total "residential" and "hotel floor area" of any "multiple dwelling" to be altered or demolished in which "harassment" has occurred; or (ii) 20 percent of the total "floor area" of any new or altered "building" on the "cure requirement lot." (*Id.* ¶ 59.)

Now, Nick & Duke asserts eight causes of action under the United States Constitution and the New York State Constitution. (*Id.* ¶¶ 66-130.) The gravamen of Nick & Duke's complaint is that HPD failed to notify it of any of the filings or proceedings that led to HPD's imposition of the restrictive declaration on the Corner Parcel, and that the regulatory scheme is unconstitutional to the extent it fails to require adequate notice to the owner of record. HPD moves to dismiss all of the claims at issue as time-barred; for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

4

## II. Legal Standard

While HPD nominally moves under Rule 12(b)(1) for lack of subject matter jurisdiction, it makes no argument that calls into question the Court's "statutory or constitutional power to adjudicate" this case, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), which is premised on the alleged denial of due process and equal protection under the United States Constitution and the Constitution of the State of New York (*see also* Dkt. No. 24 at 1 n.2). The Court, therefore, considers the motion to dismiss as made pursuant to Rule 12(b)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating whether a complaint meets these requirements, courts assume that all "factual allegations contained in the complaint" are true, *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "[A] Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

## III. Discussion

### A. Timeliness

HPD argues that Nick & Duke's First through Sixth causes of action must be dismissed as time-barred. (Dkt. No. 21 at 14–15.) These claims, brought pursuant to 42 U.S.C. § 1983, are subject to a three-year statute of limitations. *See Schoolcraft v. City of N.Y.*, 81 F. Supp. 3d 295, 300 (S.D.N.Y. 2015) (citing *Okure v. Owens*, 816 F.2d 45, 47 (2d Cir. 1987), *aff'd*, 488 U.S. 235 (1989)). "The date on which an action accrues is governed by federal law, which provides that an action generally accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Paige-Bey v. City of N.Y.*, No. 13 Civ. 7300, 2016 WL 7217197, at *2 (E.D.N.Y. Dec. 12, 2016) (citation omitted) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).

Nick & Duke alleges that it did not become aware of the proceedings and final determination by HPD until May 1, 2013, which would make its due process claims timely by fourteen days. (*See* FAC ¶¶ 57-58; Dkt. No. 27 at 6.) Even accepting this allegation as true, HPD argues that Nick & Duke nevertheless had "constructive notice" by August 4, 2011, when HPD recorded its CONH denial against the property. (Dkt. No. 21 at 15.) Because the Complaint in this action was filed on April 14, 2016, HPD contends that the claims at issue are time-barred.

HPD cites no legal authority for the proposition that the recording of a CONH denial constitutes constructive notice as *a matter of law*. The Court is, on a motion to dismiss, "limited to the facts contained in, or incorporated into, the [FAC]." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). As such, the Court "cannot rule as a matter of law that [Nick & Duke] had constructive notice." *Id.*; *see also Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 194–95 (2d Cir. 2003) ("[D]efendants bear a heavy burden in establishing that the plaintiff was on inquiry notice

6

as a matter of law." (quoting *Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993)).

HPD also points to Nick & Duke's Amended and Restated Ground Lease with Audthan, which it entered into on May 24, 2013. That lease contains provisions which explicitly recite HPD's 2009 finding of harassment and the denial of MJG's CONH application, as well as provisions that discuss the Cure. (Dkt. No. 27 at 6.) HPD argues that it is implausible that Nick & Duke did not have notice of the CONH application or final determination before May 1, 2013. (*Id.*) HPD argues that "[i]t strains credulity" to believe that Nick & Duke had no knowledge of the proceedings until May 1, 2013, but was nevertheless able to incorporate them into the "107-page single-spaced lease" by May 24, 2013. (*Id.*) While discovery may produce evidence to support HPD's argument, at the motion to dismiss stage, the Court assumes that all "factual allegations contained in the complaint" are true. *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz*, 534 U.S. at 508 n.1). "[D]raw[ing] all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95, as this Court must do, HPD's motion to dismiss claims one through six as time-barred is denied.[4]

### B. Due Process Claims

The right to procedural due process derives from the Fourteenth Amendment, which provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The requirements of procedural due process apply "only to

---

[4] On July 31, 2017, however, Mr. Kohly submitted an affidavit to the Court, indicating that he is in possession of "certain documents that seem to indicate that the then tenant advised [Mr. Kohly] about purported findings of harassment on the property owned by Nick & Duke in 2011." (Dkt. No. 43 ¶ 4.) This admission, and the documents it references, are outside the complaint and therefore may not be considered on a motion to dismiss. However, HPD may seek to engage in targeted discovery as to whether the claims are time-barred, owing to Mr. Kohly's actual or constructive knowledge of the proceedings prior to the date stated in the pleadings.

7

the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

"In order for a civil action under 42 U.S.C. § 1983 to survive a 12(b)(6) motion to dismiss, the plaintiff must preliminarily set forth facts in the complaint demonstrating a deprivation of a liberty or property interest protected by the Constitution or federal statutes without due process of law." *Jordan v. Goord*, No. 00 Civ. 1294, 2001 WL 1286977, at *1 (S.D.N.Y. Oct. 22, 2001). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). The Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

In seven causes of action, Nick & Duke claims that its due process rights were violated as a result of the proceedings that led to the application of the Cure to the Corner Parcel. (FAC ¶¶ 66-121.) The first, third, and fifth causes of action allege that HPD violated Nick & Duke's due process rights by failing to notify Nick & Duke, as owner of the Corner Parcel, of the proceedings. The second, fourth, and sixth causes of action are facial challenges to the constitutionality of certain provisions of the regulatory scheme itself. The seventh cause of action challenges the imposition of the Cure to Lot 3 of the Corner Parcel

As to the facial challenges brought by Nick & Duke, each count asserts a due process challenge to a provision of the regulatory scheme that allows for the imposition of a restrictive declaration on a property, in perpetuity, *without notification to the owner*. The regulatory scheme is set forth in Title 28, Chapter 10 of the Rules of the City of New York ("RCNY"),

8

which govern the application and approval process for a CONH made pursuant to Admin. Code § 27-2093 and ZR §§ 98-70 and 93-90. *See* 28 RCNY § 10-01 *et seq*.

First, because the rules allow a lessee, as opposed to an owner, to be a CONH applicant, Nick & Duke argues that 28 RCNY §§ 10-01 to -03 are facially unconstitutional. (FAC ¶¶ 76–84 ("Count Two").) 28 RCNY § 10-03 requires an application be made by an "applicant." 28 RCNY § 10-01 defines "Applicant" as "(i) an owner, or (ii) a principal or officer of an owner who is authorized to sign on behalf of and bind such owner." "Owner" is then defined as, among other things, "the *lessee* pursuant to a net lease of the entire property with an unexpired term of not less than ten years from the date of submission of the application." 28 RCNY § 10-01 (emphasis added). In this way, the applicant need not be the owner of record. And there is no requirement that the owner of record consent to the filing of a CONH application. (FAC ¶ 80.)

Second, 28 RCNY § 10-06 describes certain procedures for conducting an OATH hearing. In particular, it provides that "HPD shall serve a notice of hearing by regular mail upon the applicant and any other individual or entity as determined by HPD." 28 RCNY § 10-06(b). Thus, providing notice of the hearing to the owner of record is discretionary. Nick & Duke argues that it is "a clear violation of due process" to "afford the applicant (or anyone) more rights than the owner of record with regard to a hearing" and seeks an order declaring 28 RCNY § 10-06 facially unconstitutional. (Dkt. No. 24 at 19; *see* FAC ¶¶ 92–99 ("Count Four").)

Third, the RCNY provides that "HPD shall provide the *applicant* with written notice of the final determination." 28 RCNY § 10-07(d) (emphasis added). Nick & Duke contends that this provision is facially unconstitutional because it allows for the deprivation of a property interest without notice to the owner. (FAC ¶¶ 107–111 ("Count Six").)

Each of Nick & Duke's facial challenges is premised on the failure of the challenged regulation to require that notice be provided to the *owner of record* before taking a step in the

9

process that leads to the eventual deprivation of the owner's property interest.[5] However, another provision in the regulatory scheme expressly requires such notice be provided to the owner.

Specifically, the RCNY provisions at issue "govern the application and approval process for a CONH made pursuant to Admin. Code § 27-2093." (Dkt. No. 24 at 6.) Admin. Code § 27-2093 requires that, "[u]pon receipt of an application for a certification of no harassment, the commissioner shall publish notice in such publication as the commissioner deems appropriate for a period of seven consecutive days" and "shall mail notice to the *owner of record*." Admin Code § 27-2093(d)(1) (emphasis added). (*See also* FAC ¶ 31 ("New York City code requires that upon filing of a CONH application, notice be mailed to the owner of record.").) Logically, the "receipt of an application for a certification of no harassment" precedes both the OATH hearing, which is the subject of Nick & Duke's challenge to 28 RCNY § 10-06 (*see* FAC, Count Four), as well as the final determination, the subject of Nick & Duke's challenge to 28 RCNY § 10-07(d) (*see* FAC, Count Six). Admin. Code § 27-2093(d)(1), moreover, requires that notice of an application for a CONH be mailed to the "owner of record" even though an applicant may be an individual other than the owner. (*See* FAC, Count Two.)

Each facial challenge to the constitutionality of the regulatory scheme is premised on the failure of the scheme to require HPD to provide notice reasonably calculated to apprise the owner of record of the pendency of the action and to afford the owner an opportunity to present

---

[5] HPD argues that Nick & Duke's lack of participation does not give rise to a cognizable defense against a finding of harassment. (*See* Dkt. No. 12 at 18–19.) As Nick & Duke points out, this is a "red herring." (Dkt. No. 24 at 22.) At this stage, the issue is whether Nick & Duke, as owner of the property, was entitled to notification at each of the various steps challenged in the FAC, not whether it would have prevailed had such notice been provided.

objections or withhold consent.[6] (*See* FAC ¶¶ 82, 95, 109.)  Because Admin. Code § 27-2093(d)(1) requires that notice be provided to the owner of record, and because Nick & Duke provides no explanation for why such notice does not provide it sufficient opportunity to object, HPD's motion to dismiss Counts Two, Four, and Six of the FAC is granted.

Turning to the as-applied challenges, Nick & Duke alleges that it was not provided notice and an opportunity to be heard at various stages of the proceedings, including when MJG applied for the CONH (FAC ¶¶ 66–75 ("Count One")); at the OATH hearing (FAC ¶¶ 85–91 ("Count Three")); or after the final determination (FAC ¶¶ 100–06 ("Count Five")).  Each claim is based on the failure of HPD to take sufficient steps to ensure that notice was provided to Nick & Duke.

Count One of the FAC is based on Nick & Duke's allegation that "notice of the application for CONH was not mailed to the owner of record (Nick & Duke) in a way reasonably calculated so it would receive the same because it was mailed to an incorrect address." (Dkt. No. 24 at 15.)  That is, while "HPD claims that . . . it mailed a copy of the initial 'Request for Comment on Application for CONH'" to Nick & Duke, "[t]he mailing address used by HPD was incorrect." (FAC ¶¶ 32–33.)  Indeed, Nick & Duke has provided evidence that the mailing was returned to the City of New York marked: "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," and "UNABLE TO FORWARD." (Dkt. No. 26-5.)[7]

---

[6] Although Nick & Duke alleges that, "[i]n accordance with the terms of the Ground Lease, Nick & Duke retained the right to require MJG to abandon its application for a CONH" (FAC ¶ 39), it does not identify any provision in that document that supports this allegation (*see* Dkt. No. 27 at 5).  Even so, by providing sufficient notice to the owner of record, the regulatory scheme does not interfere with Nick & Duke's ability to exercise its alleged contractual right to withhold consent.

[7] The Court considers this exhibit for purposes of a motion to dismiss as a "document[] . . . integral to the complaint." *Rhee-Karn*, 2014 WL 4494126, at *3.

11

Count Three of the FAC challenges the adequacy of the notice provided to Nick & Duke of the pendency of the OATH hearing, and Count Five challenges the adequacy of the notice provided to Nick & Duke of the final determination of harassment. HPD's letter notice regarding the notice of the final determination was also undeliverable. (*See* Dkt. No. 26-6 (displaying the envelope sent by the City of New York stamped "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSES," and "UNABLE TO FORWARD").)

To be sure, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Nevertheless, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane*, 339 U.S. at 314) (internal quotation marks omitted). In *Flowers*, the Supreme Court expressly "addressed whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." *Id.* at 227. In that case, the State of Arkansas had sent a certified letter to a homeowner notifying him of an impending tax sale of his house. The letter was returned unclaimed. "In response to the returned form suggesting that [the owner] had not received notice that he was about to lose his property, the State did—nothing." *Id.* at 234. The Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225.

HPD provides no reason why the logic of *Flowers* does not apply with equal force to the present circumstances. Of course, Nick & Duke's property was not sold by the State, but HPD imposed a restrictive declaration on the Corner Parcel in perpetuity, precluding the issuance of an "as of right" building permit unless and until the owner complies with the Cure. (FAC ¶¶ 55,

58.) And while the application for a CONH was filed by Nick & Duke's net lessee, to whom it had ceded broad control of the subject property, the Court does not, at the motion to dismiss stage, conclude that Nick and Duke's decision to lease the property constituted constructive notice to the owner of the possibility that the lessee would apply for a CONH. *See Newman*, 335 F.3d at 194–95; *Rothman*, 220 F.3d at 98.

Accordingly, HPD's motion to dismiss Counts One, Three, and Five, is denied.

Finally, Nick & Duke challenges the imposition of the Cure to Lot 3 of the Corner Parcel. (FAC ¶¶ 112–121 ("Count Seven").) Nick & Duke alleges that Lot 3 has "never had any SRO tenants," and that "no harassment ever occurred on Lot 3." (Dkt. No. 24 at 24.) HPD concedes that "the finding of harassment was recorded against Lot 1 and not against Lot 3." (Dkt. No. 21 at 24 (citation omitted).) The Cure applies to Lot 3 simply because the owner has chosen to merge the lots for development purposes. (*See id.* at 24–25.) "It is not the City that is obligating plaintiff to merge the two zoning lots," and Nick & Duke is free to "to develop a smaller 'as of right' building on Lot 3 without the use of Lot 1's unused floor area." (Dkt. No. 27 at 8; Dkt. No. 29 at 8.)

Accordingly, HPD's motion to dismiss Count Seven is granted.

### C. Equal Protection Claims

Count Eight of the FAC seeks an order declaring that the regulatory scheme at issue is unconstitutional for causing a deprivation of equal protection. (FAC ¶¶ 122–130.)

"The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). In other words, "[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result

13

of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Nick & Duke asserts that "the regulatory scheme improperly forces Nick & Duke, a non-harasser, and those similarly situated to bear a public burden that fairly should be borne by the taxpayers as a whole." (FAC ¶ 127). However, Nick & Duke does not allege that it is a member of a suspect class, or that owners of property in the Special West Chelsea District, or any district with anti-harassment regulations, constitute a suspect class.

While the Equal Protection Clause is typically invoked to bring lawsuits claiming discrimination based on membership in a protected class, where a plaintiff does not allege membership in a protected class, he may still prevail on a "class-of-one" theory of equal protection. *See Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam). A class-of-one claim arises when a plaintiff claims that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In order to succeed on such a claim, the plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Neilson*, 409 F.3d at 104). Class-of-one plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144,

159 (2d Cir. 2006)) (internal quotation mark omitted). Indeed, "the comparator[]'s circumstances must be 'prima facie identical.'" *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (quoting *Neilson*, 409 F.3d at 105). The comparison to similarly situated individuals should "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Neilson*, 409 F.3d at 105. "It is well established that this pleading standard is 'demanding.'" *In re the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14 Civ. 7228, 2016 WL 1181727, at *6 (S.D.N.Y. Mar. 25, 2016), *aff'd*, 664 F. App'x 98 (2d Cir. 2016) (quoting *Norwood v. Salvatore*, No. 12 Civ. 1025, 2014 WL 203306, at *7 (N.D.N.Y. Jan. 17, 2014)).

Nick & Duke compares itself to other "non-harasser[s]" and "taxpayers as a whole." (FAC ¶ 127.) But Nick & Duke is the owner of a building in which harassment was found to have taken place—it is not similarly situated with all other taxpayers. Nick & Duke has not demonstrated that its circumstances are "prima facie identical" to taxpayers as a whole. *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 693 (quoting *Neilson*, 409 F.3d at 105) (internal quotation marks omitted).

Even if Nick & Duke were able to demonstrate sufficient similarity to all other taxpayers, it similarly fails to allege that it "was intentionally singled out for reasons that so lack *any reasonable nexus with a legitimate governmental policy* that an improper purpose—whether personal or otherwise—is all but certain." *Neilson*, 409 F.3d at 105 (emphasis added). That is, Nick & Duke does allege that "[t]he regulatory scheme is flawed," and that "[t]here are no findings or empirical data to support the claims that the regulatory scheme would help resolve [a housing] crisis; or that it does not punish those whose have not engaged in harassment." (FAC

¶¶ 125–26.) But it fails allege that the regulatory scheme is not a "legitimate governmental policy" or that its treatment pursuant to that scheme lacks "any reasonable nexus" with that policy. *Neilson*, 409 F.3d at 105. Moreover, Nick & Duke provide no reason for this Court to disagree with the holding in *ABN 51st St. Partners v. City of New York*, that the scheme "provides thoughtful and rational means to pursue a legitimate government purpose." 724 F. Supp. 1142, 1152 (S.D.N.Y. 1989) (analyzing the Zoning Resolution provision that a finding of harassment runs with the land in response to a substantive due process challenge).

Accordingly, HPD's motion to dismiss Count Eight is granted.

### III. Conclusion

For the foregoing reasons, HPD's motion to dismiss the First Amended Complaint is GRANTED IN PART and DENIED IN PART. The Clerk of Court is directed to close the motion at docket number 19.

SO ORDERED.

Dated: August 9, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge